IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Joyce J. Nicholson              :

    Plaintiff                :  (Case No. 3:14-CV-1819)

    v.                       :

Carolyn W. Colvin              :  Judge Richard P. Conaboy
Commissioner of the Social
Security Administration        :

    Defendant                :

---

Memorandum

    We consider here Plaintiff's appeal of a denial of
Supplemental Security Income benefits ("SSI") under Title XVI of
the Social Security Act ("Act"), § 1614(a)(3)(A).  The
administrative law judge ("ALJ") who evaluated this claim found
that the Plaintiff has the residual functional capacity ("RFC") to
perform light work with certain limitations (R.21)and that jobs
exist in significant numbers in the national economy that the
Plaintiff can perform.  (R.25).  Thus, the ALJ denied Plaintiff's
claim, a denial that was subsequently affirmed by the Appeals
Council.  (R.2-6).  Plaintiff's appeal is based upon seven
assertions: (1) that the ALJ erred by finding Plaintiff's
fibromyalgia to be non-severe; (2) that the ALJ erred in finding
that the Plaintiff does not meet a medical listing at § 12.05(C);
(3) that the ALJ erred by according limited weight to the testimony
of a psychological consultant; (4) that the ALJ erred in finding

1

that the Plaintiff was not fully credible regarding the severity of her limitations; (5) that the ALJ erred in her assessment of Plaintiff's RFC; (6) that the ALJ erred in the extent to which he relied upon the vocational expert's testimony; and (7) that the ALJ erred in failing to make specific findings regarding Plaintiff's capacity to perform basic work-related activities.

## I. Background.

Plaintiff was 48 years old at the time of her hearing before the ALJ. (R.31). She completed the ninth grade. (Id). Her last employment was as a cashier in a fast food restaurant at some undetermined point in 2008 or 2009. [1] She also had previous experience as a packer and a hotel maid. (R.46-47). The record indicates that the Claimant was fired by her last employer for being late and failing to keep up with her work. (R.239). Claimant testified that she had been receiving unemployment compensation for some time until her eligibility expried. (R.31-32). Plaintiff alleges a disability onset date of January 1, 2012 in her protectively filed application for SSI of July 23, 2012. (R.16).

### A. Physical Impairment Evidence.

The medical evidence of record indicates that Plaintiff presented at the Carlisle Regional Medical Center on November 1,

---

[1] The claimant testified that she never worked as a cashier, but rather had worked as a sandwich maker at Burger King, McDonald's and Wendy's. This lack of clarity makes little difference because the vocational expert testified that each of these jobs would be in the same classification. (R.46-47).

2011 complaining of right leg pain unrelated to any known injury. (R.216). Dr. Scott Rainkin indicated his clinical impression that Claimant was suffering from arthralgia and osteoarthritis pain. (R218). Dr. Rainkin prescribed Percocet and Motrin for pain and discharged Claimant with instructions that she should return to the emergency department if her symptoms worsened or failed to improve. (Id.).

On September 28, 2012, Plaintiff presented at the Saddler Health Center in Carlisle, Pennsylvania where she was seen by Dr. Luan V. Pham. Dr. Pham's notes indicate that Plaintiff had ongoing pain in both knees, hands, shoulders and arms. (R.253). Dr. Pham's examination also revealed swelling of her right leg and Dr. Pham alluded to injections in her knee that had been administered at some unspecified prior time and "did not help her at all." (Id). Dr. Pham's assessments included myalgia and bilateral knee pain and his notes reflect his suspicion that Plaintiff had fibromyalgia or some kind of connective tissue disorder given the diffuse nature of her pain and multiple bilateral trigger points. (R.253-54). Dr. Pham prescribed Cymbalta but did not offer Plaintiff stronger pain medication because she had a history of substance abuse. (Id.). Dr. Pham also expressed an interest in getting Plaintiff to an orthopedic specialist or having her undergo an MRI but noted that she had no insurance to cover such costs. (R.254).

On October 4, 2012, Plaintiff presented for a disability

3

evaluation by Dr. Thomas McLaughlin. (R.225-230). Dr. McLaughlin's findings included: that Plaintiff walked with an antalgic gate favoring her right lower extremity; swelling of the right knee suprapatellar area; that claimant was incapable of standing on one leg at a time; and that all of her fibromyalgia points were positive. (R.228-29). Dr. McLaughlin's impressions included: (1) diffuse pain likely secondary to fibromyalgia; and (2) right knee suprapatellar swelling of undetermined ideology. Dr. McLaughlin also found: that Plaintiff could lift and carry up to twenty pounds frequently; that she could stand and walk no more than three hours in an eight hour day; that she could sit without limitation; and that she could occasionally stoop, crouch, balance, and climb but never kneel. (R.232-33).

**B.   Mental Impairment Evidence.**

Plaintiff underwent a consultative psychological examination by Examining Psychologist Christopher Royer, Psy. D., on October 25, 2012. Dr. Royer's examination was performed at the request of the SSA through the Pennsylvania Bureau of Disability Determination. Dr. Royer's findings regarding Plaintiff included: impaired short-term memory; intelligence quotient (68) in the impaired range; borderline intellectual functioning; and depressive disorder. (R.240-41). Dr. Royer's assessments of Plaintiff's intellectual capacity were derived from a test (the Wechsler Adult Intelligence Scale) he administered to Plaintiff (R.240).

4

On November 1, 2012, Plaintiff's evaluation by Dr. Royer was submitted to Sandra Banks, Ph. D.  Dr. Banks did not examine Plaintiff but merely reviewed Dr. Royer's notes and findings. Based upon her review of Plaintiff's medical records, including Dr. Royer's report, Dr. Banks concluded that Dr. Royer's "opinion relies heavily on the subjective report of symptoms and limitations provided by the individual and the totality of the evidence does not support the opinion.  The CF examiner's opinion is an overestimate of the severity of the individual's restrictions/limitations and based only on a snapshot of the individual's functioning."  (R.62).  Dr. Banks then opined that Plaintiff is not disabled.  (R.64).

### C.   ALJ Hearing Testimony.

Plaintiff testified that she completed ninth grade and then dropped out of school to work.  (R.31).  She had been receiving unemployment compensation for approximately four years prior to the hearing but her eligibility has expired.  (R.32).  She testified: that she cannot stand or sit for long; that her knees and back "go out on me"; that she has a problem focusing her attention; that intense pain in her right knee disturbs her sleep each night; that her fibromyalgia causes a pressure and a stinging feeling in her lower back; and that she experiences pain intermittently in both her lower back and the back of her neck and that she is not on pain medication because she has no insurance.  (R.32-34).

5

With respect to her mental state, Plaintiff testified that her depression manifests in a feeling that she doesn't want to be around anyone and in the desire to sleep. [2] (R.34). She also states that she was taking medication for depression but stopped because it was giving her "a weird feeling". (Id.).

Regarding her activity level, Plaintiff testified that she tries to help around the house and occasionally babysits for her six-year old granddaughter. (R.35). Her babysitting activity is confined to the weekends when the child's mother takes her to Plaintiff's residence. (R.36). Plaintiff stated that she watches television with the child and draws with her. (Id.).

In response to questioning from her counsel, Plaintiff stated that she withdrew from school in the ninth grade due to a feeling that everyone was looking at her and laughing at her. This feeling of self-consciousness was related to her stuttering. (R.37). She also testified that she had trouble reading and doing math. (Id.). Plaintiff testified at some length that she has difficulty staying focused on anything and that she is prone to start a task and not finish it. (R.37-38). She testified further that the back pain from her fibromyalgia can bring her to tears and that her knees sometimes buckle when she walks and that this happens as often as three times each day. (R.39). She stated that she can only stand

---

[2] Plaintiff's testimony is paraphrased to some extent due to the fact that her testimony is somewhat inarticulate.

from five to ten minutes before she starts to experience pain. (Id.)

Plaintiff's husband testified that, while Plaintiff can dress herself and do a little cooking, he is basically taking care of her. (R.43). He also stated that he has noticed a decline in her mentally, that she does not want to leave the house, that in the year before the hearing she lost 40 pounds, and that "she don't smile no more." (R.43-44).

Testimony was also provided by Ms. Harder, a Vocational Expert. ("VE"). Ms. Harder testified that she had examined Plaintiff's work history. (R.46). Plaintiff's work history had been confined to light, unskilled work as a fast food worker and a cleaning person in a hotel. (R.46-47). The ALJ asked the VE to respond to a hypothetical question in which the VE would assume the following limitations: that Plaintiff was capable of performing light work; that she could stand or walk no more than two to three hours per day; that she could only occasionally bend, stoop, crouch, balance, or climb; that the work should involve only routine, repetitive one or two step tasks; that the Plaintiff have only occasional interaction with the public, co-workers, and supervisors; that the Plaintiff not be exposed to fast-paced production quotas; and that the Plaintiff would be expected to be off-task five to ten percent of the time due to her psychological symptoms and physical pain. (R.48-49). The limitations that the

7

VE was asked to assume were supported by findings made by Dr. McLaughlin and Dr. Banks.  The VE responded that it was difficult to say whether Plaintiff could do any of her past work.  (Id.). The VE explained that, if one supposed Plaintiff would be off-task ten percent of the time, she certainly could not do any of her previous jobs and, even if one presumed only five percent downtime, the lack of a sit-stand option would preclude Plaintiff from all past relevant work.  (R.49).  The VE did conclude that if one presumed all aspects of the hypothetical question with only a five percent downtime factor, other jobs existed in the national economy (e.g., a laundry worker who operates a machine that folds clothing) that Plaintiff could perform.  (R.50).

**D.   ALJ Decision.**

The ALJ determined that Plaintiff had not been under a disability since her alleged onset date and made the following findings of fact and conclusions of law:

1.   The Plaintiff had not engaged in substantial gainful activity since July 23, 2012, the application date (20 CFR 416.971 et seq.).

2.   The Plaintiff has the following severe impairments: osteoarthritis of the right knee; depression; and borderline intellectual functioning. (20 CFR 416.920(c)).

3.   The Plaintiff does not have an impairment or

8

combination of impairments that meets or medically
equals the severity of one of the listed impairments
in 20 CFR Part 404, Subpart P; Appendix 1 (20 CFR
416.920(d), 416.925 and 416.926).

4.   After careful consideration of the entire record,
the undersigned finds that the Plaintiff has the
residual functional capacity to perform light work
as defined in 20 CFR 416.967(b) except the Plaintiff
can alternate sitting and standing at will; stand
and/or walk two to three hours per eight hour work
day; never kneel or crawl; occasionally bend, stoop,
crouch, balance, and climb; avoid work at
unprotected heights or around dangerous moving
machinery; perform routine, repetitive one to two
step tasks; no complex reading or math; occasional
interaction with the public, co-workers, and
supervisors; occasional changes in the work setting;
occasional decision-making; no fast-paced production
quota; and off-task five percent of the work time.

5.   The Plaintiff is unable to perform any past relevant
work (20 CFR 416.965).

6.   The Plaintiff was born on March 21, 1965 and was 47
years old, which is defined as a younger individual
age 18-49, on the date the application was filed (20

9

CFR 416.963).

7.    The Plaintiff has a limited education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not an issue in this case because the Plaintiff's past relevant work is unskilled (20 CFR 416.968).

9.    Considering the Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (20 CFR 416.969 and 416.969(a)).

10.    The Plaintiff has not been under a disability, as defined in the Social Security Act, since July 23, 2012, the date the application was filed (20 CFR 416.920(g)).

## II.    Disability Determination Process.

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[3]  It is necessary for the

---

[3] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.   20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); see *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (R.19).

---

in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

## III.  Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence *vel
> non* of substantial evidence is *not* merely a
> quantitative exercise.  A single piece of
> evidence will not satisfy the substantiality
> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it
> is overwhelmed by other evidence--
> particularly certain types of evidence (e.g.,
> that offered by treating physicians)--or if

> it really constitutes not evidence but mere
> conclusion.  *See* [*Cotter*, 642 F.2d] at 706
> ("'Substantial evidence' can only be
> considered as supporting evidence in
> relationship to all the other evidence in the
> record.") (footnote omitted).  The search for
> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative

13

evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .". "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision

14

is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See, e.g., Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV.   Discussion.

### A. General Considerations

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky*, 606 F.2d at 406. Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such,

the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406.  Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed."  *Id.*

**B.   Plaintiff's Allegations of Error.**

**1.   Whether the ALJ Erred at Step Two by Finding Plaintiff's Fibromyalgia to be Non-severe?**

Plaintiff argues that her fibromyalgia should have been found to be "severe".  She argues correctly that an impairment is severe if it significantly limits an individual's ability to perform basic work activities.  See 20 CFR § 416.921.  Plaintiff argues further that the record in this case demonstrates that she is afflicted by disabling fibromyalgia.  Under SSR 12-2p a person should be determined to have fibromyalgia if he or she has:

1.   A history of widespread pain in all quadrants of the body and axial skeletal pain that has persisted for at least three months; and

2.   At least eleven positive tender points on physical examination.  The positive tender points must be found bilaterally and both above and below the waist; and

16

3.    Evidence that other disorders that caused the symptoms or signs were excluded.  Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from fibromyalgia.  Therefore, it is common in cases involving fibromyalgia to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs.

The evidence of record substantiates the first two elements of the SSR 12-2p test.  However, as noted by the ALJ (R.18-19), while both Dr. Pham and Dr. McLaughlin suspected fibromyalgia, there is no actual diagnosis of fibromyalgia in this record and there is certainly no testing referenced in the record that would rule out other causes for Plaintiff's back and leg pain as required by the third prong of the SSR 12-2p test.  Indeed, the ALJ has recognized that Plaintiff has severe osteoarthritis, a condition that could produce the type of pain Plaintiff experiences.  Accordingly, the ALJ's conclusion that Plaintiff did not suffer from severe fibromyalgia is reasonable.  The Plaintiff had the burden of proof to demonstrate the existence of severe fibromyalgia and simply did not carry that burden.

2.    **Whether the ALJ erred at Step Three of the Disability Determination Process in Finding that Plaintiff does not**

### Meet Medical Listing 12-05(c)?

Plaintiff takes issue with the fact that she was not determined to be disabled pursuant to Medical Listing 12-05(c), which describes a disabling mental impairment.  To be disabled under Medical Listing 12-05(c) a Plaintiff must meet a three-part test: (1) a valid verbal, performance or full-scale IQ of 60 through 70; (2) a physical or other mental impairment that imposes additional and significant work-related limitations; and (3) proof that mental retardation was manifest during the developmental period (before age 22). [4]

Defendant counters that, while Plaintiff meets the first and second prongs of the Listing 12-05(c) test, she has failed to adduce proof that her intellectual disability resulted in a significant deficit in adaptive functioning prior to attaining the age of 22.  Our review of the record, persuades the Court that Defendant is correct on this point.  While it is true that Plaintiff testified to being unhappy at school and experiencing difficulty reading and doing mathematics, there is no record of her measured IQ before she became 22 years of age.  The Plaintiff testified that she quit school after the ninth grade to work. There is no testimony, much less any documentation, that she was ever identified as a mentally retarded individual or placed in a

---

[4] The latest formulation of Medical Listing 12-05(c) criteria substitutes "intellectual disability" for mental retardation".  While the nomenclature has changed, the analysis has not.

special education setting.   Surely her IQ (as measured by Dr. Royer when Plaintiff was 47 was years of age) is somewhat below average, but that fact alone does not render her disabled.   In fact, her employment history with at least four separate employers over a period of years demonstrates that she has, at times, functioned successfully in various work environments.   The Plaintiff has simply failed to prove a necessary element – – onset of intellectual disability before age 22 – – of her Listing 12-05(c) claim.   Thus, we find that the ALJ's decision in this regard is reasonable and consistent with both the SSA's regulations and applicable case law.   See Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

### 3.   Whether the ALJ Erred by According Limited Weight to the Opinion Rendered by Dr. Christopher Royer?

The ALJ elected to give little weight to the opinion of an examining psychologist, Dr. Christopher Royer, and gave more weight to the opinion of Dr. Sandra Banks, who critiqued Dr. Royer's opinion after reviewing his report.   The case law is clear that it is within the ALJ's authority to choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision.   Plummer v. Apfel, 186 F.3d 422, 429 (3d. Cir. 1999). The ALJ may even elevate the opinion of a non-treating, non-examining physician over that of a treating physician in an appropriate case.   Morales v. Apfel, 225 F.3d 310, 317.

Here, neither Dr. Royer nor Dr. Banks were treating physicians and, while Dr. Royer did have the benefit of one session with Plaintiff, he certainly does not occupy the status of a long-term treating physician who has continuously observed the patient for a protracted period of time. See Rocco v. Heckler, 826 F.2d 1348, 1350 (3d. Cir. 1987). Thus, our inquiry becomes simply whether there is substantial evidence of record to justify the ALJ's preference for Dr. Banks' opinion. The ALJ's decision to elevate Dr. Banks' opinion flowed from his perception that Dr. Royer's findings of "marked" and extreme" mental limitations were contradicted by his acknowledgments that, at the time of his one encounter with her, the Plaintiff's "associations were appropriate to topic", her mental status was "fully oriented", she could recall "remote personal information", and she did not exhibit "perceptual disturbances or other gross psycopathy". (R.240). In addition, Dr. Royer's assessment was inconsistent to some extent with that of a treating physician, Dr. Thomas W. McLaughlin, who noted on October 4, 2012 that Plaintiff "was awake, alert, and oriented to time, place and person and was able to engage in appropriate conversation, answer questions appropriately, and follow directions." (R.229).

The case law precludes this Court from substituting its judgment for that of the ALJ even if the Court would have reached a different conclusion so long as the ALJ's decision is supported by

a quantum of evidence that a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, supra. Evaluating this record as a whole, the Court finds that a reasonable mind could accept the ALJ's decision to place more credence in Dr. Banks' opinion.  Accordingly, the Court must reject Plaintiff's assignment of error on this point.

> **4.    Whether the ALJ's Finding that Plaintiff's Testimony Regarding the Severity of Her Limitations was not Fully Credible is Supported by Substantial Evidence?**

Plaintiff asserts that the ALJ erred in finding that, while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms,...the claimant's statements concerning the intensity, persistence, and limiting effect of the symptoms are not entirely credible...." (R.22).  The ALJ explained that she reached that conclusion due to various "inconsistencies in the record".  (R.23).  These inconsistencies include: (1) that the claimant's primary care physician prescribed Cymbalta for her pain which Plaintiff discontinued after only eight days despite the doctor's instruction that the medication would take six to eight weeks to be effective; (2) the record indicates that Plaintiff advised Dr. Royer on October 25, 2012 that she had stopped using drugs in her early twenties, but other evidence of record indicates that she was treated for an abscess in her right wrist secondary to heroin and

21

cocaine injection on April 10-12, 2010 when she was 45 years of age; (3) the claimant testified (R.34) that she was not taking any pain medication at her hearing before the ALJ despite her claims of severe, chronic pain; (4) Dr. McLaughlin's findings regarding the Plaintiff's strength, mobility, and flexibility, to which the ALJ assigned significant weight, contradict Plaintiff's testimony regarding her physical capacity; and (5) the Plaintiff's work history contradicts her assertion of disability. (R.23-24). Considering the record as a whole, the Court finds that the ALJ's explanation why he did not entirely credit Plaintiff's subjective assessments of her limitations is rational and supported by competent evidence of record.  The ALJ's reservations, particularly with reference to Plaintiff's lack of treatment and failure to take prescribed medication over a period of years, is certainly probative that her symptoms may not be as severe as she contends. Mason v. Shalala, 994 F.2d 1058, 1068 (3d. Cir. 1993) (citing Welch v. Heckler, 808 F.2d 264, 270 (3d. Cir. 1986). See also Mickles v. Shalala, 29 F.3d 918, 930 Fourth Cir. 1994).

**5.   Whether the ALJ Failed to Provide a Clear and Supported RFC?**

Plaintiff argues that the ALJ's determination that Plaintiff could perform light work with various limitations was insufficiently clear to support his assessment of her RFC. Plaintiff's argument has two components: (1) that the hypothetical

22

question submitted for the VE's consideration did not describe "light work" as defined at 20 CFR 416.967(b); and (2) that the ALJ's determination that Plaintiff would be "off task" five percent of the time is not supported by substantial evidence.

With respect to the adequacy of the hypothetical question and whether its limitations describe "light work", 20 CFR § 416.967(b) provides:

> Light work involves lifting no more than 20 pounds at a
> time with frequent lifting or carrying of objects
> weighting up to 10 pounds.  Even though the weight lifted
> may be very little, a job is in this category when it
> requires a good deal of walking or standing, or when it
> involves sitting most of the time with some pushing and
> pulling of arm or leg controls.  To be considered capable
> of performing a full or wide range of light work, you
> must have the ability to do substantially all of these
> activities.

The Plaintiff's assignment of error here is that the ALJ improperly determined that she could do light work.  The record indicates otherwise.

The ALJ's hypothetical question to the VE asked her to assume that Plaintiff could perform light work with numerous additional limitations including: "the claimant can alternate sitting and standing at will; stand and/or walk two to three hours per eight

hour work day; never kneel or crawl; occasionally bend, stoop, crouch, balance, and climb; avoid work at unprotected heights or around dangerous moving machinery; perform routine, repetitive one or two step tasks; no complex reading or math; occasional interaction with the public, coworkers, and supervisors; occasional changes in the work setting; occasional decision-making; no fast paced production quotas; and off task five percent of the time." Thus, the ALJ was asking the VE to assume that Plaintiff could not perform the full panoply of light work, but rather that she could perform work that, while essentially light, was much more sharply curtailed than light work. We find that the ALJ's assessment of Plaintiff's RFC, as reflected in his hypothetical question to the VE, was supported in virtually all aspects by evidence of record. More than that is not required at Step V of the Disability Determination Process. Plummer v. Apfel, supra, at 431.

Plaintiff also faults the ALJ's conclusion that she would be off work five percent of the time. She is correct that the record contains no objective medical evidence that she would be off task five percent of the time or, for that matter, any portion of the time. The Court concludes that, because Plaintiff has produced no evidence that her impairments would require her to be "off task" for any portion of her time spent doing a job within her RFC, her argument that the AlJ should have found that she would be "off task" more than five percent of the time is illogical. The ALJ

24

appears to have been giving her subjective complaints some level of credibility where the evidence of record did not require him to do so.  For that reason, because even the five percent estimate finds no support in the record, the ALJ's finding in this regard can be no more than harmless error.

### 6.   Whether Substantial Evaluation (sic) Does not Support the ALJ's Step V Evaluation?

Plaintiff argues here that the ALJ's requirement that the Plaintiff work only at a job where she "can alternate sitting and standing at will" is "too vague to determine the extent of the erosion on the occupational base." (R.21 and Doc. 11 at 21).  This argument borders on the disingenuous.

The ALJ's directive that the Plaintiff may sit or stand "at will" constitutes a clear direction that it is for the Plaintiff to determine when and for how long she sits or stands.  There is no indication that the VE was in any manner confused by this directive.  Plaintiff's argument unaccountably suggests that the ALJ's directive would <u>require</u> the Plaintiff to sit and stand for specified periods of time.  Plaintiff's interpretation of the ALJ's "sit/stand at will" requirement is simply inaccurate and the Court finds that the VE properly factored the "sit/stand at will" requirement into her analysis of what jobs the Plaintiff could perform.  Accordingly, the VE's assessment of the Plaintiff's employability was appropriately credit by the ALJ.

### 7. Whether the ALJ erred by not Making Specific Findings Regarding Nicholson's Ability to Perform Basic Work-related Activities as Required by SSR 85-15?

Plaintiff's final argument is based upon SSR 85-15, a policy statement promulgated by the SSA which, inter alia, advises that an ALJ should be cognizant that (1) the potential job base for those with mental impairments is limited; and (2) mental impairments can make even simple tasks intolerable for some mentally impaired persons. Plaintiff contends that the ALJ did not adequately consider "how Nicholson's specific limitations would affect her ability to perform the occupational demands of the three jobs identified." (Doc. 11 at 24). Plaintiff is clearly incorrect in this regard.

The record substantiates that the ALJ did, in fact, consider Plaintiff's identified mental impairments. In his hypothetical question to the VE, the ALJ specified that Plaintiff's work capacity was limited to repetitive one or two step tasks; that the Plaintiff could tolerate only limited interaction with the public, co-workers, or supervisors; that the Plaintiff be exposed to only occasional changes in setting; that the Plaintiff engage in only occasional decision making; that Plaintiff not work in an environment with fast-paced production quotas; and that Plaintiff be permitted to be off task up to five percent of the time. (R.21). Each of these limitations that the ALJ built into the

26

hypothetical question to the VE was in recognition of Plaintiff's impaired mental status.   Moreover, each of these limitations were logical extensions of the type and degree of mental impairments that affect Plaintiff as supported by substantial evidence of record.   (See pages 18-21 ante).   Accordingly, while the Plaintiff may disagree with the conclusions the ALJ reached regarding her mental status, the Court, having reviewed the record thoroughly, can only conclude that the method the ALJ used was consistent with both the Disability Determination Process and SSR 85-15.

V.   **Conclusion**.

For all the foregoing reasons, the decision of the Commissioner to deny benefits in this case is affirmed.   An Order consistent with this determination will be filed contemporaneously herewith.

BY THE COURT

Honorable Richard P. Conaboy
United States District Court

3-18-15

27